## THE PHOENIX INSURANCE COMPANY *vs.* DONNA CHURCHWELL[1] & another.[2]

No. 01-P-1023.

Middlesex. December 12, 2002. - March 24, 2003.

Present: PORADA, LAURENCE, & GREEN, JJ.

*Insurance,* Homeowner's insurance, Motor vehicle exclusion, Coverage. *Consumer Protection Act,* Insurance.

A motor vehicle exclusion clause in a policy of homeowner's insurance operated to exclude coverage for a plaintiff's claims against the insured, who was the owner and operator of the motor vehicle involved, based on a theory that the insured's negligent supervision of the plaintiff's child (i.e., the insured's failure to place the child, who was a passenger in the insured's vehicle, in a child restraint seat) proximately caused the child's bodily injuries. [614-616]

A trial court judge correctly concluded that an insurance company had violated neither G. L. c. 93A nor G. L. c. 176D by denying coverage for a claim, where the insurance company had a good faith belief that its interpretation of the motor vehicle exclusion clause in the homeowner's insurance policy at issue precluded coverage. [616-617]

CIVIL ACTION commenced in the Superior Court Department on September 25, 2000.

The case was heard by *Nonnie S. Burnes,* J., on motions for summary judgment.

*John P. Connell* for Donna Churchwell.

*William P. Hurley* for the plaintiff.

PORADA, J. The principal issue in this case is whether the motor vehicle exclusion clause in a homeowner's policy precluded coverage for bodily injury claims incurred in an automobile accident. A Superior Court judge, on cross motions for summary judgment, ruled that it did. This appeal by the claimants followed.

---

[1]Individually and as administratrix of the estate of Cosette Churchwell.

[2]Amy Kirk.

We summarize the uncontested facts and procedural history of the case. Amy Kirk (Kirk) was the owner and operator of a motor vehicle that slammed head on into a tree. In the car with Kirk were her daughter, Lauren Kirk, age two, and Cosette Churchwell, age three. Both children were in the rear passenger seat. Lauren Kirk was seated in a child restraint seat and Cosette Churchwell was seated in the rear passenger seat with a seat belt across her lap. At impact, Cosette was severely injured and rendered a quadriplegic. Fifteen months later, Cosette died due to complications from her injuries. Lauren Kirk received only a minor injury to her shoulder in the accident.

Donna Churchwell (Churchwell) brought suit against Kirk in the Superior Court alleging negligent operation of a motor vehicle, negligent supervision of a minor, and loss of consortium. After suit was filed, Churchwell made a demand for payment of the policy limits under the homeowner's policy issued to Kirk by the Phoenix Insurance Company (Phoenix). That demand was premised on the theory that Kirk's negligent supervision of Churchwell's daughter (failing to place her in a proper child restraint seat) was the proximate cause of Cosette's injuries; as such, her claim for negligent supervision was covered under the homeowner's policy issued by Phoenix.

Phoenix denied coverage based on the motor vehicle exclusion provision in Kirk's homeowner's policy.[3] Phoenix then commenced this action in the Superior Court against the Churchwells, Donna and Cosette, and Kirk, seeking a declaration that the homeowner's insurance policy issued to Kirk did not cover the Churchwells' claims.

In turn, Churchwell asserted a counterclaim seeking a declaration that Kirk's homeowner's insurance policy did cover the injuries resulting from Kirk's negligent supervision of her minor

---

[3]The exclusion clause reads as follows:

"1. Coverage E — Personal Liability and Coverage F — Medical Payments to Others do not apply to bodily injury . . . :

"f. arising out of:

(1) the ownership, maintenance, [or] use . . . of motor vehicles . . . owned or operated by . . . any insured[.]"

daughter. Churchwell also sought recovery against Phoenix for a violation of G. L. c. 93A and c. 176D for unfair settlement practices in denying her claim.

Acting on cross motions for summary judgment, a Superior Court judge allowed Phoenix's motion for summary judgment and denied Churchwell's motion for summary judgment on the ground that it is well settled that when the owner or operator of a motor vehicle is involved in an automobile accident resulting in injuries, the motor vehicle exclusion provision of the owner's or operator's homeowner's insurance policy excuses the insurer from defending or indemnifying the homeowner insured from claims arising from the accident. *Worcester Mut. Ins. Co.* v. *Marnell*, 398 Mass. 240, 244-245 (1986). *Shamban* v. *Worcester Ins. Co.*, 47 Mass. App. Ct. 10, 15 (1999). The judge also ruled that Phoenix had not violated G. L. c. 93A or c. 176D because it had a good faith belief that its interpretation of the motor vehicle exclusion clause in its policy precluded coverage.

Churchwell argues that the judge erred because the claim is based not on the use of a motor vehicle but rather on the separate and distinct claim of negligent supervision of a minor by Kirk in failing to use a proper child restraint seat for her daughter. For support of her argument, Churchwell relies upon dicta in the *Marnell* decision, 398 Mass. at 245, and the *Shamban* decision, 47 Mass. App. Ct. at 15, in which the motor vehicle exclusion clauses in the homeowners' policies did not preclude coverage under the policy for claims based on the theory of negligent supervision, which was considered separate and distinct from the claims based on the negligent use and operation of a motor vehicle resulting in the personal injuries. In the *Marnell* case, the negligent supervision claim was based on the insureds' negligent supervision of a party in which their nineteen year old son became intoxicated, left the party, and caused the death of another person while negligently operating a motor vehicle owned by him. *Worcester Mut. Ins. Co.* v. *Marnell*, 398 Mass. at 241. In the *Shamban* case, the insureds were charged with negligent supervision of their fifteen year old son in permitting him to operate a dirt bike owned by him without adult supervision, which allegedly resulted in the son's crashing into his riding companion with the dirt bike. *Shamban* v.

*Worcester Ins. Co.*, 47 Mass. App. Ct. at 10-11. Churchwell argues that like the circumstances in the *Marnell* and *Shamban* cases, the negligent supervision claim here is based on the insured's negligent supervision of a minor, the proximate cause of the severe and ultimately fatal injuries to Cosette (particularly when compared to the fact that right beside her was Lauren Kirk, who, as a result of being secured to a child restraint seat, suffered only a minor bruise on her shoulder). As such, Churchwell argues, the claim for negligent supervision is separate and distinct from Kirk's use and operation of her motor vehicle, and the motor vehicle exclusion clause does not apply.

While Churchwell's argument is not without merit, it overstates the thrust of the courts' holdings in those decisions. In both cases, the result reached was not based on the theory advanced but on the fact that the vehicle involved in the accident was not owned or operated by the insureds and the inclusion of a severability clause in the policy, thus making the risk of injury one contemplated by the purpose of homeowners' insurance. *Worcester Mut. Ins. Co.* v. *Marnell*, 398 Mass. at 244-245. *Shamban* v. *Worcester Ins. Co.*, 47 Mass. App. Ct. at 15. As the case law has evolved, it appears clear that the purpose of the motor vehicle exclusion in the insurance policy controls the applicability of coverage. *Merrimack Mut. Fire Ins. Co.* v. *Sampson*, 28 Mass. App. Ct. 353, 358 (1990). In *Merrimack*, we explained that "[t]he automobile exclusion was obviously intended to omit from the homeowners' policy coverage which is obtainable under an automobile insurance policy. The homeowner who owns and operates an automobile ordinarily procures automobile insurance and also determines the amount of that coverage. The homeowner can reasonably be expected to rely on that coverage for activities related to the ownership and operation of a motor vehicle unless . . . a premium is paid for supplemental automobile insurance under the homeowners' policy. In contrast, when the homeowner is subjected to claims as a social host or negligent supervisor for actions of persons operating vehicles owned by others, the homeowner does not usually control the amount of automobile insurance covering the operator or owner of such vehicles." *Id.* at 358. See *Ayer* v. *Imperial Cas. & Indem. Co.*, 418 Mass. 71, 72, 74 (1994)

(automobile exclusion provision of a law enforcement professional liability insurance policy operated to deny coverage to a town for claims seeking damages for injuries to third parties sustained in an automobile accident resulting from a high speed pursuit by a town police officer and based in part on the town's failure to adequately train and supervise its police officers). Accordingly, in this case where the vehicle involved in the accident was owned and operated by Kirk, we conclude the judge properly ruled that the motor vehicle exclusion in her homeowner's policy barred coverage for the Churchwells' injuries. This result supports the proper allocation of risks between an insured's homeowner's policy and automobile insurance, which appears to be the determinative factor in deciding the coverage issue. *Worcester Mut. Ins. Co.* v. *Marnell,* 398 Mass. at 245. *Merrimack Mut. Fire Ins. Co.* v. *Sampson,* 28 Mass. App. Ct. at 358. *Shamban* v. *Worcester Ins. Co.,* 47 Mass. App. Ct. at 15.

Further, we reject Churchwell's argument that liability attaches because Kirk's negligent supervision of Cosette was the proximate cause of Cosette's injuries. We have not equated the words "arising out of" the ownership or use of a motor vehicle in an insurance policy with proximate causation in tort law. *Rischitelli* v. *Safety Ins. Co.,* 423 Mass. 703, 704 (1996). Nor have we concluded that it refers "to all circumstances in which the injury would not have occurred 'but for' the involvement of a motor vehicle." *Ibid.* In the final analysis, it involves a judgment call. *Id.* at 706. Here, although not necessary to our decision because of the result reached, we think it would be difficult to separate Churchwell's negligent supervision claim from Kirk's operation of her motor vehicle and to hold that Cosette's injuries did not arise out of the operation of a motor vehicle, a risk not covered by the homeowner's policy.

Finally, we address Churchwell's claim that Phoenix violated G. L. c. 93A and c. 176D in denying her claim. Phoenix's denial was predicated on its good faith and plausible interpretation that the motor vehicle exclusion in Kirk's homeowner's policy barred coverage. Immediately thereafter it filed this declaratory judgment action to resolve the coverage dispute. In those circumstances, the motion judge correctly ruled that Phoenix did not violate G. L. c. 93A and c. 176D. *Lumbermens Mut.*

*Cas. Co.* v. *Offices Unlimited, Inc.*, 419 Mass. 462, 468 (1995). *Premier Ins. Co. of Mass.* v. *Furtado*, 428 Mass. 507, 510 (1998).

*Judgment affirmed.*