[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15466
_____

D.C. Docket No. 1:11-cv-21015-PAS

EVANSTON INSURANCE COMPANY,
an Illinois Corporation,

Plaintiff - Appellee,

versus

DESIGN BUILD INTERAMERICAN, INC,
a Florida Corporation, et al.,

Defendants,

PILAR PENA,
individually and as Plenary Guardian
of Alberto Zambrana, Florida residents,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 8, 2014)

Before MARTIN, JORDAN, and SUHRHEINRICH,[*] Circuit Judges.

PER CURIAM:

Pilar Pena, appearing individually and as guardian of her husband Alberto Zambrana, appeals the entry of summary judgment in favor of Evanston Insurance Company in an insurance coverage dispute arising out of injuries Mr. Zambrana sustained at a construction site.[1]  Evanston sought a declaratory judgment that the excess commercial general liability insurance policy it issued to Design Build Interamerican, Inc. does not cover the negligence claims asserted by Ms. Pena in state court against DBI and three of DBI's employees, Manuel Leon, Pedro Ramos, and Sergio Ruiz.[2]  The district court concluded that because Mr. Zambrana sustained injuries while he was performing duties related to the conduct of DBI's business, his claims are excluded under the CGL's employer's liability exclusion,

---

[*] Honorable Richard F. Suhrheinrich, United States Circuit Judge for the Sixth Circuit, sitting by designation.

[1] Mr. Zambrana was critically injured while delivering a steel pipe to a construction site managed by DBI.  Mr. Zambrana was delivering the pipe on behalf of Royal Plumbing Inc., a subcontractor of DBI. When he arrived at the site with the pipe, Mr. Zambrana was asked to help carry it to an upper level of the construction site. While on the upper level, he stepped on an unsupported drop ceiling and fell twenty feet to a concrete floor, sustaining serious injuries.

[2] Mr. Leon is DBI's President, Mr. Ramos is Mr. Leon's partner, and Mr. Ruiz is a DBI employee.  It is not disputed that the CGL policy provides coverage to DBI and also to DBI's officers and employees, subject to the policy's exceptions and/or exclusions.

even when the policy's separation of insureds provision is applied to that exclusion.[3]

On appeal, Ms. Pena argues that, under Florida law, the separation of insureds provision, as applied to the "any insured" language within the employer's liability exclusion, precludes application of this exclusion in the context of an employee suing a co-employee rather than suing his or her employer.  Ms. Pena does not dispute that the employer's liability exclusion precludes coverage for her claims against DBI (as Mr. Zambrana's employer), but rather argues that coverage is not precluded for the claims against the employees of DBI, namely Messrs. Leon, Ramos, and Ruiz.

Having carefully considered the parties' briefs and the record in this case and after having the benefit of oral argument, we reverse.

## I. Standard of Review

We review the district court's grant of summary judgment *de novo*, applying the same legal standards as the district court.  *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259 (11th Cir. 2004).  Summary judgment is properly

---

[3] The district court's order granting summary judgment to Evanston simply incorporated its earlier summary judgment order in a related, but separate, declaratory judgment action involving Nautilus Insurance Company, which had issued the primary insurance policy to DBI for $1,000,000.00 in coverage, against the same defendants.  Evanston's CGL policy provided $1,000,000.00 of coverage in excess of the Nautilus policy and included a "follow the form" provision, in which all of the terms and provisions of the primary insurance policy, namely the Nautilus CGL policy, are incorporated into the Evanston policy.

granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(c)).

The interpretation of an insurance contract is a matter of law subject to *de novo* review. *Dahl-Eimers v. Mut. of Omaha Life Ins. Co.*, 986 F.2d 1379, 1381 (11th Cir. 1993). Because this is a diversity action, Florida law governs our interpretation of the CGL policy in this case. *Hartford Acc. & Indem. Co. v. Beaver*, 466 F.3d 1289, 1291 (11th Cir. 2006).

## II. Discussion

The parties' dispute centers on the proper interpretation of two provisions in the CGL policy.

Evanston contends that the plain language of the employer's liability exclusion precludes coverage for Mr. Zambrana's claims against DBI and the three named defendants. That provision provides, in relevant part:

Exclusion: Injury to Employees, Contractors, Volunteers and Workers

. . . This Insurance does not apply to:

e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of any insured arising out of and in the course of:

4

> (a) Employment by any Insured; or
>
> (b) Performing duties related to the conduct of any insured's business[.]
>
> . . . This exclusion applies:
>
> (1) Whether any insured may be liable as an employer or in any other capacity . . . .

Evanston argues that because it is undisputed that Mr. Zambrana was an employee of DBI (as defined in the CGL policy) who was performing duties related to DBI's business at the time he suffered injuries, the plain language of the employer's liability exclusion precludes coverage.

Ms. Pena does not dispute that Mr. Zambrana was an "employee" of DBI as defined in the employer liability exclusion or that he was performing duties related to DBI's business, but instead responds that the exclusion's terminology ("any insured") must be read in light of the policy's separation of insureds provision (also commonly referred to as a "severability of interest" provision), which provides:

> 7. Separation Of Insureds
>
> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this Insurance applies:
>
> a. As if each Named Insured were the only Named Insured; and

5

b. Separately to each insured against whom claim
is made or "suit" is brought.

Florida courts have explained that severability clauses, like the separation of insureds provision here, create separate insurable interests in each individual insured under a policy, such that the conduct of one insured will not necessarily exclude coverage for all other insureds. *See Mactown, Inc. v. Cont'l Ins. Co.*, 716 So. 2d 289, 292-93 (Fla. 3d DCA 1998). Thus, in Ms. Pena's view, the entire CGL policy must be read as if it applies separately to Messrs. Leon, Ramos, and Ruiz so that the language—"an employee of <u>any insured</u>"—in the employer's liability exclusion would not preclude coverage for Messrs. Leon, Ramos, or Ruiz because Mr. Zambrana was not "an employee of [Messrs.] [Leon], [Ramos], or [Ruiz]." Rather, he was an employee of DBI only, such that the employer's liability exclusion would bar coverage only as to DBI.

In support of her construction of the CGL policy, Ms. Pena relies on *Premier Ins. Co. v. Adams*, 632 So. 2d 1054 (Fla. 5th DCA 1994). In *Premier*, the Fifth District considered the effect of a severability of insurance clause in a homeowner's policy on the policy's exclusionary clause. *Id.* at 1056. The severability clause provided that "[t]his insurance applies separately to each insured[,]" *id.*, and the exclusionary clause precluded coverage for bodily injury "which is expected or intended by *any* insured," *id.* at 1055. The Fifth District first

noted that there were no Florida cases dealing with the "interaction of exclusionary clauses and severability clauses or the term 'any insured' as contrasted to 'an insured' or 'the insured,' in an exclusionary clause" *id.*, and thus looked to decisions in several other jurisdictions, *id.* at 1056–57.  The Fifth District found persuasive the reasoning of the Massachusetts Supreme Court that the severability clause created "a separate insurance policy for each insured," and thus the use of the term "any insured" in the exclusionary provision of the policy "referred only to persons claiming coverage under the policy."  *Id.* at 1056 (describing the reasoning of *Worcester Mut. Ins. Co. v. Marnell*, 398 Mass. 240, 496 N.E.2d 158 (1986)).  The Fifth District agreed with the Massachusetts Supreme Court that this interpretation "gave reasonable meaning to both the exclusionary clause and the severability clause[,]" which it found preferable "to one which leaves a part useless or inexplicable."  *Id.* at 1057. [4]  Moreover, the Fifth District concluded that, to the extent the severability and exclusionary provisions created an ambiguity, the policy had to be construed strictly against the insurer as the drafter of the policy.  *Id.*

Noting that the policy at issue "contains an exclusion for the intentional acts of 'any insured' and contains a severability clause creating a separate insurable

---

[4] In reaching this conclusion, the Fifth District specifically rejected an alternative construction of the interplay of the severability and exclusionary clauses that would treat the use of the term "any insured" in an exclusionary clause as "express[ing] a contractual intent to create joint obligations and to prohibit recovery by an innocent coinsured."  *Id.* at 1056 (describing the holding of *Chacon v. Am. Fam. Mut. Ins. Co.*, 788 P.2d 748 (Colo. 1990)).

interest in each individual insured," the Fifth District in *Premier* held that the "the most plausible interpretation is that the exclusionary clause is to exclude coverage for the separate insurable interest of that insured who intentionally causes the injury." *Id.*

The reasoning and holding of *Premier* govern our interpretation of the severability and exclusionary provisions of Evanston's CGL policy in this case.[5] First, like the policy in *Premier*, Evanston's policy provides coverage for several insureds, including DBI and Messrs. Leon, Ramos, and Ruiz. Second, the separation of insureds provision in the Evanston CGL policy explicitly provides that the insurance applies "[a]s if each Named Insured were the only Named Insured" and just as the severability of insurance clause did in *Premier*, it states that it applies "[s]eparately to each insured." Because we are applying Florida law, we must interpret this language as requiring that each insured has separate insurance coverage, *Premier*, 632 So. 2d at 1057, and therefore read all provisions

---

[5] In diversity cases, "the rule is that, absent a decision from the state supreme court on an issue of state law, we are bound to follow decisions of the state's intermediate appellate courts unless there is some persuasive indication that the highest court of the state would decide the issue differently." *McMahan v. Toto*, 311 F.3d 1077, 1080 (11th Cir. 2002). Moreover, the Florida Supreme Court has held that "[t]he decisions of the district courts of appeal represent the law of Florida unless and until they are overruled by this Court. Thus, in the absence of interdistrict conflict, district court decisions bind all Florida trial courts." *Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771, 775 (11th Cir. 2000) (quoting *Pardo v. State*, 596 So. 2d 665, 666 (Fla.1992)) (internal quotation marks omitted). Here, neither the Florida Supreme Court nor other Florida district courts of appeal have addressed the interplay of a severability clause with the use of the term "any insured" in an exclusionary clause, so we follow *Premier* as the law of Florida.

of the policy, including the employer's liability exclusion, as if coverage is for <u>only</u> DBI, or <u>only</u> Mr. Leon, or <u>only</u> Mr. Ramos, or <u>only</u> Mr. Ruiz.[6]  Third, when applying this construction of the severability provision to the employer's liability exclusion in the Evanston CGL policy, we conclude that coverage is <u>not</u> precluded for Messrs. Leon, Ramos, or Ruiz.  The exclusion states that the insurance does not apply to bodily injury to "[a]n 'employee' of <u>any insured</u>."  (Emphasis added). Reading this provision as if Mr. Leon were the only insured, coverage would not be precluded because Mr. Zambrana is not an employee of Mr. Leon.  The same construction is true for Mr. Ramos and for Mr. Ruiz.  Moreover, we note that this reading does not render the inclusion of the employer's liability exclusion superfluous because, as Ms. Pena concedes, the exclusion applies to DBI, who for purposes of this exclusion is the employer of Mr. Zambrana.

Construing the separation of insureds provision and the use of the term "any insured" in the employer's liability exclusion as we have is consistent with the Fifth District's treatment of the two similar provisions at issue in *Premier*.  The policy in *Premier* "contains an exclusion for the intentional acts of 'any insured,'"

---

[6] We recognize that our circuit, when interpreting a contract governed by Georgia law, explained that "unlike the phrase 'the insured,' the phrase 'any insured' unambiguously expresses a contractual intent to create joint obligations and to prohibit recovery by an innocent co-insured." *Sales v. State Farm Fire & Cas. Co.*, 849 F.2d 1383, 1385 (11th Cir. 1988).  In this case, however, we must apply Florida law, which, in *Premier*, holds to the contrary that the term "any insured," when used in a severability of insureds provision, creates separate insurable interests in each insured.

meaning that coverage was excluded only "for the separate insurable interest of that insured who intentionally causes the injury." 632 So. 2d at 1057. Likewise here, Evanston's CGL policy contains an exclusion for bodily injury to "an employee of any insured," meaning that coverage is excluded only "for the separate insurable interest of that insured" who is the employer of the individual who suffered the injury. Essentially, the exclusion's use of the term "any insured" when read in conjunction with the severability clause creates a class of insureds who are excluded from coverage, i.e., employers of the injured claimant. Accordingly, as to other insureds who are not in the class of excludable insureds, but against whom a claim could be asserted, i.e., non-employers of the injured claimant, coverage is not precluded.

*Premier* involved an exclusion for intentional torts in a homeowner's policy, rather than an employer's liability exclusion in a CGL policy. But that does not alter our analysis.

First, the reasoning in *Premier* was not dependent on the type of insurance policy but instead was based on the meaning of the language in the severability clause and its effect on the use of the term "any insured" in the exclusion. Significantly, the Fifth District in *Premier* concluded that the severability clause, in and of itself, created a separate insurable interest in each individual insured under the policy, which when applied to the policy's use of the term "any insured" means

10

that each insured must be treated independently from other insureds.  This principle is applicable regardless of the type of insurance policy at issue.

Second, another Florida appellate court has applied a severability of insurance clause to an employee exclusion in an automobile liability policy and concluded that "[t]he exclusion as to employees of the insured is thus limited and confined to the employees of the employer against whom the claim is asserted." *Shelby Mut. Ins. Co. v. Schuitema*, 183 So. 2d 571, 574 (Fla. 4th DCA 1966), *approved* 193 So. 2d 435 (Fla. 1967).[7]  Like the Fifth District in *Premier*, the Fourth District in *Schuitema* recognized that "the principle that the severability of interests clause must be construed as intended to treat each insured independently from the other insured" must be applied to other pertinent provisions of the policy. *Id.*  Specifically, when applying this principle to the employee bodily injury exclusion, the court in *Schuitema* held that "where the claimant is not the employee of the additional insured against whom the claim is made, then there is coverage." *Id.*

---

[7] Although the policy at issue in *Schuitema* used the term "the insured" as contrasted with *Premier*'s use of the term "any insured," both the Fifth District in *Premier* and the Fourth District in *Schuitema* treated the terms as being used severally as opposed to collectively or jointly.  183 So. 2d at 573-74.  In *Premier* the term "any insured" was treated as being used severally based on the Fifth District's interpretation of the severability of interests clause's effect on that term where it was used elsewhere in the policy, 632 So. 2d at 1057, whereas in *Schuitema*, the term "the insured" was defined explicitly in the severability of interests clause as being used "severally," 183 So. 2d at 572.  Either way, in Florida the term "any insured" when used in an exclusionary provision of a policy containing a severability of interests provision is treated no differently from the meaning of the term "the insured" in *Schuitema*.

11

Evanston argues that coverage for Messrs. Leon, Ramos, and Ruiz is excluded based on the additional language in the employer's liability exclusion, which provides (emphasis added), "[t]his exclusion applies: (1) [w]hether any insured may be liable as an employer <u>or in any other capacity</u>."  We are not persuaded.  As we have explained, the preliminary language of the exclusion in this policy—"[a]n employee of any insured"—read in conjunction with the separation of insureds provision, requires that the bodily injury claim be made by an employee of the insured employer who is claiming coverage.  Only those insureds who are employers of the injured claimant are excluded from coverage. To read the subsequent language "in any other capacity" as including all insureds, even those who are not the employer of the claimant and hence, not precluded from coverage under the first part of this provision, would render not only the separation of insureds provision but also the first part of the exclusion meaningless. Moreover, the language "in any other capacity" is not superfluous even when limited to an insured who is an employer of the claimant, because this language can be read to exclude coverage for an insured employer who may be sued in a role other than employer, such as an owner of a vehicle, as a general contractor, or as a state actor.

Evanston's reliance on *Mercury Ins. Co. of Fla. v. Charlie's Tree Serv., Inc.*, 29 So. 3d 375 (Fla. 4th DCA 2010), does not sway us.  There was no dispute that

12

the insured at issue in that case was the claimant's employer, and thus the exclusion applied without reliance on the "in any other capacity" language. *Aetna Comm. Ins. Co. v. Am. Sign Co.*, 687 So. 2d 834, 836 (Fla. 2d DCA 1996), likewise is inapplicable as it is silent as to whether the policy at issue contained a severability of interests clause and thus contains no analysis of what effect such a clause would have had on the  interpretation of the exclusionary clause.

We also reject Evanston's alternative argument that coverage for Messrs. Leon, Ramos, and Ruiz is excluded under the co-employee provision contained in "Section II – Who Is An Insured" of the CGL policy.  This provision provides that DBI's "employees," other than its executive officers, are insureds but that they are not covered for bodily injury to other co-employees.  Evanston, however, has not shown at summary judgment that Mr. Zambrana was an "employee" of DBI for purposes of this section of the policy, which defines "employee" as follows: "'Employee'" includes a 'leased worker.' 'Employee' does not include a 'temporary worker.'"  Although it is not disputed that Mr. Zambrana meets the definition of "employee" for purposes of the employer's liability exclusion, that provision of the CGL policy replaces the meaning of "employee" from the Definitions Section with a separate and more expansive definition that is applicable only to the employer's liability exclusion.  Here, the record shows that Mr. Zambrana was employed as a driver for Royal Plumbing, and the district court

13

found that he was an "employee" of DBI under the expansive definition of "employee" for purposes of the employer's liability exclusion. There is nothing in the record to support Evanston's argument that Mr. Zambrana was an "employee" of DBI as that term is defined for purposes of the co-employee exclusion contained in Section II – Who Is An Insured.

### III.  Conclusion

Based on precedent from Florida's appellate courts, we conclude that the employer liability exclusion in Evanston's CGL policy does not preclude coverage for Ms. Pena's claims against Messrs. Leon, Ramos, and Ruiz, as none of these insured individuals were Mr. Zambrana's employer.

**REVERSED AND REMANDED.**[8]

---

[8] Ms. Pena's pending motion to take judicial notice is hereby denied as moot.